Thank you. I'm very relieved that everybody could join us today, at least remotely. We will hear argument now in number 251306, Mark Lee v. West Virginia University Medical Corporation. And Ms. Jones, when you're ready. May it please the court. Thank you, your honors, for the opportunity to present this morning and for pivoting to a remote session. Mr. Harrison, good morning. I would like to reserve, if I can, three minutes for rebuttal. Your honors, I'm proud to represent Dr. Mark Lee and respectfully request that this honorable court vacate the decision of the trial court and remand to permit Dr. Lee to present his claims to a jury. Dr. Lee is an impressive and highly regarded neurosurgeon. He's had a very successful career, and this hiccup, I will say, at the WVU UHA entity has been something that he's had to overcome. By way of brief background, he has a medical and doctoral degree from the University of Chicago Pritzker School. He has residency in pediatric neurosurgery fellowship training at NYU, an undergraduate major in the U.S. Army. He spent 10 years on the faculty at the Medical College of Georgia, chaired the Department of Neurosurgery there. He was then a CEO of a private practice group and later obtained an MBA as well. This is an impressive intellectual and academic neurosurgeon. He was recruited significantly by WVU to come to West Virginia and turn around what was a struggling Department of Neurosurgery, and he thought it was going to be a great fit. And he enjoyed the work initially. Unfortunately, UHA, University Health Associates, the entity that has partnered with and jointly employed Dr. Lee, has perhaps created a misimpression of him, which is why I wanted to provide some background. Can I, I'm sorry, I 100% understand your client's impressive credentials. But just when you mentioned UHA being a joint employer, I do have just sort of a question about the posture of this case. I know that your position is that UHA and WVU are joint employers. The district court didn't decide that, didn't even assume that. Although he did make two, the district court judge made two sort of narrower assumptions. But I am still struggling to figure out how, if we are not assuming away the jointer integrated employment question, then in a suit against UHA, it even matters why Dr. Lee was removed from his position as chair over at WVU. Do you understand my question? I think so, Your Honor. I'll attempt to answer it, but you can let me know if you need more. First of all, the two entities work together to employ physicians who serve as faculty members, but also serve the hospital system. And so each employee, Dr. Lee, like other physician employees, are employed by both entities. In the pleadings that was admitted as a joint employment scenario. I do understand your argument on that point. But I guess I'm just sort of struggling with what happened in the district court because the district court did not assume that that was correct for purposes of its decision, but it nevertheless kind of reached the merits of why Dr. Lee was terminated over at WVU. And I understand why that matters if you think they are joint or integrated employers, but I'm struggling with why it matters if you don't think that. And the district court was not prepared to say I'm assuming that that is the joint employment part is correct. I will let this drop in a minute because I this is just something that has confused me and perhaps I'm not understanding the district court decision properly. Well, Judge, there's an admission in the pleadings of joint employment from the from the first step. So I think that's an important issue to consider. I agree when we got to the contract claim as well, there were issues about whether that joint employment status went to the same, allowed the same terms for each entity to be considered and the district court didn't think so. But we take the position based on that admission of joint employment and the interrelationship and the facts that demonstrate the negotiation had to involve both parties. Payment comes from both parties, substantially from UHA, but only partially from WVU. Counsel, how does that how does that work with WVU and sovereign immunity? I mean, is there a case where a court has allowed a where the court is allowed where private employee to be liable, I mean under your theory of joint employment, where his counterpart has been dismissed based on sovereign immunity? Your Honor, the I won't point to a specific case identical to that. What I can tell you is that by virtue of the status of the employment and the fact that both agreements refer to each other that the party's intent, which when you evaluate an integrated employer scenario is a critical point, the party's intent was that both scenarios applied. That is, both entities had joint control. Ms. Jones, let me go at it another way because that's what's confused, I think, some folks. For the not the university, the university has sovereign immunity, but for the other party to get out, they're going to have to plead the affirmative offense of derivative sovereign immunity, and they've not done that at this point. So why does it matter? At this point, all what the issue is here now is whether or not you get by summary judgment on a material issue of fact or a discrimination as a matter of law. Is that not correct? This issue of derivative sovereign immunity, sovereign immunity, all that, that doesn't matter today. What matters is you get by summary judgment on the discrimination, the retaliation claim. Isn't that correct? Well, I would agree with you, Your Honor. Yeah, Judge Floyd, I would agree with that. I would agree with you, Judge Floyd. Yes. Now, let me ask you something else. One other thing to try to put this in focus in my mind. It's a hypothetical question. It's not a trap, not a trick, but just bear me out and listen to it. You have a bar. You have a female bartender has a male clientele. The old clientele goes to the management and says, we don't want a female bartender. We want a male bartender. They fire the female bartender. In the meantime, they hire the hostess who is a female. She becomes a bartender. They look around for a female bartender, I mean for a male bartender, and they can't find one. And then they say to the hostess, you can have the job. Now the question is, is there not still direct discrimination as to the original bartender? There's a good argument that there is, Your Honor. Is this your case? Your Honor, it's an interesting comparison. I think you're right. I think you're right. We believe there is direct evidence here and a direct evidence claim on the discrimination. And that's something that the trial court disregarded. Our position has been that the direct evidence with respect to age discrimination was relevant to be considered, that should have been evaluated, and was not. The direct evidence information or evidence supports direct comments made to Dr. Lee by the decision maker in the context of replacing him, age-based comments made on two separate occasions. No denial that those statements of age-based comments were made. Can I ask you a question? This may go circle back to Judge Floyd's hypothetical at some point, but for it to be direct evidence, the comments have to be related to the employment decision that's being challenged. And you have comments saying it would be really good to get a young person in this job because they could stay for a long time. But then they turn around and hire another 62-year-old. So it is hard for me to see, I mean, I guess you could look at it one of two ways. How are these comments directly related to the employment decision if the decision was to replace one 62-year-old with another 62-year-old, I guess, and or even if it's direct evidence, how do you show but-for causation? He's hired when he was 59, if I'm getting this right. So it's not like they hired him when he was 30 and then thought he was too old. They hire him when he's 59. Two years later, when he's 61, they basically start easing him out of the job. And then they replace him with someone the same age as him. I've just never quite seen a case like that where someone would say there's an inference of age discrimination here. Here's why, Your Honor. Two main points. Number one is because in the context of making those statements, multiple statements on multiple occasions. Two, right? Do we have more than two? Two occasions and two statements within each event. They were made directly to Dr. Lee saying we are going to replace you with somebody younger. So the context of telling him he's out and being removed is to put in somebody younger. Very direct about the position and about the plan decision.  other things occur relative to age, but jumping ahead, he reports that through counsel. Then a decision to remove him is actually made. So again, another direct report, decision to remove is made. The interim chair, who was his vice chair at the time, Dr. Conrad, replaces him. He replaces him from August, from September 1st until May. There is a search committee that is created. The search committee created included Dr. Conrad as a member. If anyone has any experience in academia, any candidate interested in the position is not going to be on the search committee. So Dr. Conrad is on the search committee, is not looking to be or looking at as a candidate. So our position is his later position as permanent chair in May was effectively a sham. But is there a record? I mean, I see that argument in your appellate brief. Yes. I guess I have two questions. Did you present this sham argument that they fired him for age discrimination reasons, but then they hire another 62 year old to cover their tracks? Is that argument presented in the district court? And is there record evidence that would support it? Besides the fact that the person who got the job was on the search committee? Well, your honor, we developed that in the same argument in the response to the summary judgment position. And we do believe that because of the sort of steps that had to be taken for the hiring of a new chair, which involved the search committee, various candidates, all either dropping out or not being of interest and then them going back to Dr. Conrad and saying, why don't you take this position? That we believe that creates an inference that may not be worthy of belief for purposes of saying it's not a direct replacement of somebody else. Our position is there's enough facts there that that should be looked at, that that should be looked at carefully because it is admittedly, they are close in age. Admittedly, Dr. Lee was hired just a few years earlier and then let go. But when there are repeated statements that can, to his face, about replacing him with somebody younger and somebody who has a longer runway and who could stay in for 10 to 15 years. But let me ask you about that because there's, I mean, there's a case, I think it's Smith versus Flax, the case that talks about secession planning and how secession planning is less likely to be discriminatory. And I'm assuming that Mr. Harrison is going to probably say, you know, this was just a conversation regarding secession planning, what's going to happen after Dr. Lee leaves the position. How is that, how is that different than the case, the Smith, I think is versus Flax case? Your Honor, secession planning is entirely different, respectfully, because that's something that the person involved is planning with the person who wants to be, you know, to install a replacement. That's an understanding between the parties. That's exactly what happened here. At the time these comments were made, he's been offered this other position. They're working cooperatively basically to ease him out into this other position and replace him with someone. That's the context for the comments. When Marsh says this, everyone is under the assumption he's on his way out and they just need to figure out what happens next. Well, except that Dr. Lee wasn't under that assumption when it first came up. What matters, right, is what Dr. Marsh was saying, not what Yeah, okay. Well, respectfully, Your Honor, Dr. Marsh was saying that here's an opportunity and can we work out for you to come into this new opportunity? To say that he is not at the same time saying to Dr. Lee, if it doesn't work, Dr. Lee said to him, if it doesn't work, I want to stay on his chair. And there is record evidence with everybody that he was then staying on his chair. He told Dr. Rezai that, Dr. Rezai understood it. Dr. Marsh admitted he understood that he was still staying on his chair when he said that this wasn't going to work out for him in terms of the proposed position that they came up with and that he would stay on for a period of time. And so I understand the numbers weren't read. So I'll just ask. No, no, as long as we're asking you questions, you should feel free to answer. I do just have one question about this. I guess I understand what you're saying and this is a complicated factual record. Is there a case you can point me to where sort of roughly like this, someone is fired two years after they're hired or they start to fire him two years after, terminated fully three years after, by the same person who hired them, replaced with someone the same age. And that case goes to a jury on age discrimination. What is the closest case for you that would just sort of suggest that even though this looks kind of like it was anything but age discrimination, we can get past that and send this to a jury? Well, Judge, there was the the Sempovich case. Okay. Now, I appreciate it. It was a 21 case. The Sempovich case talked about the employer not being genuine in its position. The same actor inference was erased. It wasn't an age case, though, Your Honor. It was a sex-based Title VII claim. But there were arguments that the employer was not being genuine in what they were saying. And I think there are a lot of facts in our case that reflect our position that the employer is not being genuine in what they're saying, that they have come up with a lot of information post age comments, post reporting of age discrimination, when there was a belief that things were still on status quo. Perhaps there had been this proposal. Dr. Lee didn't love the proposal, but he was remaining as chair. He had already reported age discrimination through counsel. Then I reported age discrimination, and only then, within two weeks, was he told, you're out, and you're out now. Again, another sort of academic area. I should probably now just ask if either of my colleagues has questions. Judge Floyd? I think when you come back on the rebuttal, I want you to talk about the retaliation claim a little more. Okay. Thank you, Your Honor. Thank you. All right, Mr. Harrison. Thank you, Your Honor. Good morning. My name is Justin Harrison, and I'm obviously appearing today on behalf of West Virginia University Medical Corporation, otherwise referred to as University Health Associates or UHA. Obviously, we feel that the district court's summary judgment decision should be affirmed, and there are three principal reasons for that. First, there's no evidence that Dr. Lee's age was the motivating factor for removing him as chair, and that's the spositive of the age discrimination claim, regardless of whether we're evaluating it through the lens of direct evidence or through indirect evidence. Second, the purported activity that Dr. Lee engaged in took place after the principals decided that Dr. Lee should be removed as chair. That discussion was broached in March or April of 21. The alleged comments that Dr. Marsh made took place in May or June, May and June of 21. The decision to remove Dr. Lee as chair took place July 22nd of 21. We don't have protected activity until seven days later when the letter from Ms. Jones is sent out. Well, as to that assertion about what the timeline was, what evidence, if any, do you have in writing or anything that supports those dates? Because you got the attorney letter of 7-29-21, and then you got a follow-up of 8-12, and then on 8-29, it looks like you made the decision to terminate him, and your letter says, in light of your recent letter, we terminate you. So the only evidence in the record about timelines are the plaintiff's attorney's records. Where do you get that this decision was made in March? Well, we have testimony from all the principals that established this timeline that I just mentioned. First of all, we have Dr. Lee admitting that the discussion about him transitioning into a new role took place at his annual review. The annual review took place in March of 21. That's true as far as talking about an annual review, but no decision was made to terminate him in March. You began an academic discussion, it looks like, to me. That's correct, Your Honor. The discussion was broached at that annual review in March, but the final decision to remove Dr. Lee as chair was made by Dr. Marsh and Dr. Rezai on July 22, 2021. There was a final attempt to salvage the relationship between Dr. Lee and WU Medicine. There was a meeting that took place in Dr. Marsh's office. It was a very unproductive meeting. It sounds like it was a very negative meeting. But there was, you know, my concern regarding this is that these conversations were all dating back to March, were about transitioning him to a different position, never termination. And so it seems in the meeting as late as July 22, the conversation was about transition. And then you get the letter on the 29th and there's and then another letter on the 12th, and then we get a letter on the 18th, and it says you're removed from the chair position regarding termination. So it kind of switches over from we're going to transition you to another department or another position to just termination. How is that? I mean, what what was the motivation, I guess, for the change from transition to termination?  it's and why and it just so happened, I guess, seven days after that. Well, six days after that last April, August 12th letter. Sure, so the just sort of the records were on the same page. The final decision to remove him as chair was made following the July 22nd meeting. That's when Dr. Lee walks out of Dr. Marston's office. There's no evidence at that point. So we are so I so for my purposes I'm looking at August 18th because there's no I mean you all have not provided any evidence this other than your your party's testimony that that that the decision to terminate was on July the 22nd. I understood your honor respectfully that that is evidence and that testimony is unrebutted. Well, how is it not rebutted by the letter that Dr. Floyd? I'm, sorry Judge Floyd drew your attention to where they write I just don't understand this you say they decided to fire him on July 22nd, but They write to Dr. Lee and say that's not when they've decided to fire him They fired him after much thought about the issues raised in his August 12th letter And that's why they decided to fire him So how is that not enough to get to a jury on about when this decision was made and why? Well, Your honor respectfully those are communications coming from counsel. Those aren't that's not testimony coming from Dr. Marsh or Dr. Rezai. Okay, so you Your answer is the lawyers got this wrong, but that's not a jury question The fact that the lawyer said something different from the client. There's no fact issue there. We should all just okay, right? The sworn testimony is from Dr. Marsh and Dr. Rezai, but but going back to I guess back to my question, but there's no documentary documentary evidence. There's nothing in writing So you decide you're going to terminate them. We just all decide on July 22nd We're going to terminate them in between July the 22nd and July the 29th There is no there is There is nothing um sent to Dr. Lee saying hey, you're terminated. So is that just a conversation between? Um marsh and reside just saying hey, we're gonna terminate him, but no one takes any action to actually Notify him that he's been terminated. So, uh I I don't think this comes through in the appellate briefing, but we do have it in the record and the you know Those principals struggled with how to communicate this isn't a situation where you just randomly Remove somebody from a significant leadership position. There's planning involved. There's communication And so the principals here, dr. Marsh and dr. Lee were working with how to plan that out But to your question earlier judge benjamin you asked what changed what? Why did we go from transitioning him to a different role to now removing him as chair completely without the other role? And the answer to that is because dr. Lee rejected the new position It it was floated to him as a concept during his annual review He was receptive to it a pro forma was put together It was presented to him in may and uh Dr. Lee testified that it was a good Good concept. It was actually a concept that he had discussed with dr. Resign in the past But just ask a clarifying question are you saying that he turned down that director job at the meeting on july 22nd No, he had previously rejected. Okay. So what happened on july 22nd that made everybody change their mind and go from You can stay for a year or two. We'll have a Soft landing to get out of here As doctors, I testify. Dr. Lee kind of became uncommunicative during that meeting. That's not what dr Lee says though, so I don't understand we can't if we have conflicting testimony and he says That's all I did was say let's leave this to the lawyers Like we're trying we're going around and around on this. Let's leave it to the lawyers Actually, your honor respectfully disagree. There's no evidence in the record challenging. Dr. Rezai's Description of that meeting he referred to. Dr. Lee as being recalcitrant uh You know, dr Marsh is trying to talk to him and all dr Lee is talking about is pay me my two years and i'll walk away. That's that's dr. Lee shutting down He's not talking about a transition He's not working with him on how the department of neurosurgery is going to look for the next year And so that's and I misread the record. He does not say that he said let's leave this to the lawyers Dr. Lee did uh did say at one point or another talk to my attorneys Well, how is that ending negotiations that's like I just want to negotiate through my lawyer well As a practical matter If you're dr. Marsh or dr. Rezai, you can't manage somebody's transition to an attorney He's got to be able to talk to them About what the department of neurosurgery is going to look like what his role is going to be in that process Without having to go through counsel. Mr. Harrison all this negotiation aside Why did you fire him as dean? Your honor he was removed as chair of the department of neurosurgery because of concerns regarding his leadership role in his acumen as an administrator uh, miss jones mentioned earlier about Discussed dr. Lee's credentials. I want to be absolutely clear about this. Nobody at uha or wbu has ever faulted Dr. Lee's skills as a pediatric neurosurgeon And I will submit that anybody who's board certified neurosurgery is certainly worthy of our respect and um, Adulation, but as an administrator as an administrator, dr Lee had several shortcomings that became apparent a year after his tenure Where is the documentation of that in the record So you've got witness testimony from depositions documentation Well what you're I think what you're referring to is whether there was a written warning or whether there was a counseling form and those things don't exist and frankly, that's not too surprising because It shouldn't it shouldn't be surprising that neurosurgeons making a million dollars a year aren't going to be reviewed like other employment circumstances But there were concerns about where the department was heading and what did he needed to work on? And those were touched upon in his written evaluations And dr. Lee admitted that in his 2020 evaluation with dr. Charlton. It was unpleasant He couldn't remember specifically what was said, but he admitted he was angry Uh, and he was so upset that dr Rezai actually had to go calm him down at his condo on a sunday afternoon So we we do have record evidence that he was counseled about his performance And that the principals at wvu and uha had concerns about that and frankly, there's absolutely no Reason in the record to challenge their concerns. We've got he's chair of the department of neurosurgery He's considered to be an absentee chair He's not on campus enough his individual productivity is declining He's not attending meetings. He's actually undermining. Dr. Rezai and all that is in the record Those are the performance issues that led the principals to have that sit down with him during his annual review in 21 to say hey Would you be interested in this other role and he says yeah, they're not they're not asking him to sign a performance improvement plan There's no final warning, but the law doesn't require that But what do you do with the statement Oh everything taking everything you've said. What do you do? in a as a matter of law With the comment that we would like to have somebody Younger to have a longer runway. What what do you what do you do with that comment? So this court, uh recently in the bandy case established So what you're getting at is is dr Lee's direct evidence theory of discrimination and in order for a comment to serve as direct evidence of discrimination It's got to satisfy the four factors that this court Set forth in bandy and I think judge harris touched upon this earlier But one of the four factors requires that the comment be related to the contested employment decision And the contested employment decision here is the removal of dr. Lee as chair There's no reason to believe that those comments by dr. Marsh made in may and june of 2021 Reflect upon dr. Marsh's intention to remove dr. Lee for his age They talked about what he wants in his successor and that's somebody with longer runway and i'll tell you how that fits into the case both Dr. Rizai and dr. Lee testified that his tenure in that position was never intended to be long term Dr. Lee was brought in to fix the program and stabilize it before it got elevated to another level Dr. Rizai is trying to create this signature program of neurosciences at the rockefeller neuroscience institute with all these different subdivisions and it was critical for the neurosurgery department to To stabilize and then elevate its profile. Dr. Lee was brought in to stabilize it Dr. Lee admitted he didn't intend to be in that role for long He had other aspirations whether that was at w medicine or somewhere else I think is a debatable point, but you don't have to resolve that and dr Rizai testified he wasn't brought in to be a long-term fix in contrast You have somebody like dr. Conrad who replaced him who has a phenomenal academic record in academic medicine I mean his his resume is Is substantially different than dr. Lee's and it's about improving the profile of the department and so When you're talking about somebody who's going to stay there and have a longer runway Dr. Rizai is focused on somebody who's going to be in that role long term And dr. Conrad's already served in that role longer than dr. Lee has but the initial the initial take of that comment, by the way bandy, I mean it clearly was a direct evidence case where the Comment was that They had decided to hire somebody else who was younger and more energetic Uh in in this case is is so we could have a longer Runway, I mean which it's to me kind of synonymous. So so are you saying that those comment that comment? About the longer runway doesn't count as direct evidence in this case, correct? Your honor Based upon the holding in bandy, we do not believe it's direct evidence but You know, well, you know Hang on a second. I wrote that opinion and and I think both of you may have misread uh read it too quickly. Here's what I said here Lutheran's comment directly evinces age discrimination As it was and then and then going through the four then I went through the four factors I mean clearly this runway comment I mean, what is it if it's not that we want somebody younger? Well, your honor respectfully you can have a 70 year old in that position with a longer runway rather than somebody who's younger Or the same age. The goal is to have somebody with a longer tenure regardless of their age And so it's it's not direct evidence because it's unrelated to decision removing this chair and the undisputed evidence is that the decision to remove Dr. Lee his chair was based upon his performance on the administrative level not as a surgeon Well that goes back to my earlier comment that where where is the where is the documentation because you know, you can you can uh, uh You make a comment like we need a longer runway and that's a that's what concerns me a little bit about this case Well, as I mentioned there is no documentation where dr Lee receives a final warning or written counseling, but he does receive a written evaluation In april of 21 where they talk about areas of that need to be focused on Dr. Charlton testified that those are actually areas of improvement And that's the same thing for the evaluation that took place the year prior And so you're right. We've got testimony, but there's no reason to doubt the testimony So Let me back up a second, you know At the beginning of my remarks I mentioned that you still have to have but for causation In other words, we there still has to be reason to believe that dr Lee's age was the motivating motivating factor not one of several but the motivating factor You don't and you still don't have that here. There's no evidence that it was the motivating factor And that that that addresses both the direct evidence argument and the indirect evidence argument that was advanced by dr. Lee in his opening brief There are other aspects of this case that I would like to touch upon but before I turn to any of the subjects I Do want to pause to see if there any other questions about the direct evidence argument or the but for argument Judge floyd you had mentioned earlier some interest in talking about the retaliation theory so And maybe this goes back to judge benjamin's questions on joint employer as well Obviously, we made a sovereign immunity type argument at summary judgment. We did not renew that on appeal I don't think this court needs to reach that but You know here you've got this contract between uha And and dr Lee and the contract clearly provides that uha can make adjustments to his compensation and benefits If there's a change to his administrative role and there was a change to his administrative role. He was no longer serving his chair He was given an opportunity to increase his clinical productivity to maintain compensation and benefits, but that didn't happen And so that's why the adjustment was made. It's set forth in the contract uha clearly had the right to do that Can I just ask you a question that would help me understand the district court's opinion better? Um, so is that the theory that that When the district court says i'm going to assume you're only suing uha here West virginia university is out But I will assume without deciding that when you were removed as chair by west virginia university That was an adverse action for purposes of this employment Is what you just said why the district court made that assumption? Because once you are removed that will have these consequences for your compensation over at uha I I think that's a fair read but I think it's also important to note your honor that the joint employer Integrated employer theory that's been advanced by dr Lee was only advanced in the context of the age discrimination claim It wasn't advanced in the context of the breach of contract claim And in researching this we haven't identified any authority under west virginia law Or in this circuit that would allow a joint employer theory to advance In the context of a breach of contract claim. So I I think I thought we were talking about the retaliation claim Right, and I think that's purely just the district court relying upon the contractual ability of uha Okay to make adjustments to the compensation Well, I I don't let this immunity argument go yet Uh, do you agree that you did not plead to remove the sovereign immunity? Yes, your honor agreed. Okay We don't have to worry about that at all at this point indicate we have not raised that in our appellate arguments. All right. Thank you Okay Finally, uh with with 15 seconds I would just like to note that the constructive discharge claim also fails because of the sequence of events in the chronology and I'll just encourage Uh the court to to focus on the sequence of events And unless the court has any further questions, I will yield the floor Thank you. And uh, ms. Jones, you have time on rebuttal if you'll just wait One second so we can get the timer up. There we go Thank you, your honor, um, I have to i'd like to comment on Something council said that you can't manage through attorneys yet. That's exactly how dr Lee was told he was going to be removed as chair He was never given any kind of written documents about a you're going to be removed as chair He was never given any written documents or information that his acumen as administrator or his leadership skills Could result in his losing of his chair position. There has been nothing It was the communication after I made contact made the report of age discrimination that within Literally 12 days he's removed from his position If that's not classic retaliation, i'm not sure what is and the um The the ability to say that that letter of counsel Uh, the recent letter that was received that the court pointed out Um is in fact the only notice of his removal in this in this as this position of chair and so The court has identified in its earlier questions the need that there was nothing to support information That he was failing in his position That last review that he had was a a very positive review. He got a fifty thousand dollar bonus He got two fifty thousand dollar bonuses. He got positive written reviews He's being offered a potential position that they call significant And yet now they say he should be out. Let me just ask you. So, um It seems like that. Um Miss charlton's deposition says that look I raised some very serious concerns with him in uh, early 2020 um, you know including like mismanagement of funds, um, But more mostly just administrative managerial kinds of things, but they were serious concerns And I don't understand the gist of that testimony at least to be disputed I mean your client isn't saying that didn't happen is he? What he said and your honor did point out some things previously what dr Lee said was that she raised to him. Perhaps you're a little strong. Perhaps your approach is being viewed as too aggressive Particularly with people at the higher levels and so he he did acknowledge that This hope this mismanagement thing was clearly never came to fruition Uh, and and that wasn't something he acknowledged that she raised to him, but he did acknowledge it was more of a style Okay, so so so it's not disputed in this case that um There were concerns about his performance going back to 2020 I wouldn't say concerns about performance, but I think some personality conversations that had occurred but they weren't significant and he had the belief that he was doing very well when he was let go and Didn't know about the faculty meeting that was occurring and they told all the faculty members. Oh, dr. Lee decided to move on First of all, so that's not even true, which is another reason why their uh, uh position is not worthy of belief That Others in the department his people that worked under him The the um attendings they were very enamored of him thought he did a great job And so there is evidence to support a very positive performance Uh, and I can't just i'm just going to ask if either of my colleagues has um questions No questions All right, then. I think we are Well, thank you. I'll give you just a second to wrap up Yeah, thank you for that opportunity and uh Appreciate the court evaluating all of these fact questions because we do believe in each of the claims There are many that would dictate allowing a jury to have the case back. Thank you Well, thank you both very much. Um, i'm Sorry, we will not be able to do our usual custom of coming down to meet you in person But we appreciate your help today and I hope that we will have a chance to greet you in person soon Thank you. Thank you. Have a good week. Appreciate it
judges: Pamela A. Harris, DeAndrea Gist Benjamin, Henry F. Floyd